### IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### EASTERN DISTRICT OF TENNESSEE

In re

Case No. 05-34551

RODGERS GMC, INC.

        Debtor


CINCINNATI INSURANCE COMPANY

        Plaintiff

      v.

Adv. Proc. No. 05-3197

G. WAYNE WALLS, TRUSTEE;
M&I DEALER FINANCE, INC.;
WE SELL USED CARS, INC.;
R.J. ELDRIDGE;
RONALD L. GOFORTH;
MARGARET RODGERS LONON;
JAMES E. ROSE, and
ELIZABETH CAROL SANTELLA

        Defendants


### MEMORANDUM ON OBJECTION
### TO CLAIMS FILED UNDER
### MOTOR VEHICLE DEALER BOND


**APPEARANCES:**    MANIER & HEROD, P.C.
    Jeffrey S. Price, Esq.
    2200 One Nashville Place
    150 Fourth Avenue North
    Nashville, Tennessee 37219
    Attorneys for Plaintiff Cincinnati Insurance Company

    WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER
    Gregory C. Logue, Esq.
    Post Office Box 900
    Knoxville, Tennessee 37901-0900
    Attorneys for Defendant G. Wayne Walls, Trustee

LASSITER, TIDWELL & HILDEBRAND, PLLC
 Jennifer A. Lawson, Esq.
 150 Fourth Avenue North
 Suite 1850
 Nashville, Tennessee  37219
GODFREY & KAHN, S.C.
 Krista K. Buccholtz, Esq.
 780 North Water Street
 Milwaukee, Wisconsin  53202
 Attorneys for Defendant M&I Dealer Finance, Inc.

HODGES, DOUGHTY & CARSON, P.C.
 Keith L. Edmiston, Esq.
 Post Office Box 869
 Knoxville, Tennessee  37901-0869
 Attorneys for Defendant We Sell Cars, Inc.

R.J. ELDRIDGE
 265 Little Valley Road
 Maynardville, Tennessee  37807
 Defendant, *Pro Se*

RONALD GOFORTH
 4250 Pea Ridge Road
 Maryville, Tennessee  37804
 Defendant, *Pro Se*

MARGARET ROGERS LONON
 4701 Clinton Highway
 Knoxville, Tennessee 37912
 Defendant, *Pro Se*

JAMES E. ROSE
 1208 Bales Road
 Knoxville, Tennessee  37914
 Defendant, *Pro Se*

ELIZABETH CAROL SANTELLA
 6106 Creek head Drive
 Knoxville, Tennessee  37909
 Defendant, *Pro Se*

2

JAMES C. VALENTOUR and GEORGIA W. VALENTOUR
 1123 Cove Pointe Road
 LaFollette, Tennessee  37766
 Claimants, *Pro Se*

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

3

Before the court is the Answer and Motion Regarding the Court's Order Dated September 12, 2006 (Objection) filed by R.J. Eldridge on September 18, 2006, objecting to the validity and/or the amount of the claims of M&I Dealer Finance, Inc. (M&I) and James and Georgia Valentour (Valentours) under the Motor Vehicle Dealer Bond number B8859039 (Bond) issued by the Plaintiff, Cincinnati Insurance Company, as fixed in the court's September 12, 2006 Order.  M&I Dealer Finance, Inc.'s Response in Opposition to R.J. Eldridge's Objection (Response) was filed on October 20, 2006, and in further support thereof, on October 30, 2006, M&I filed the Affidavit of Sherry Stebnitz.  Also on October 30, 2006, Mr. Eldridge filed R.J. Eldridge's Response and Clarification in Response to M&I Dealer Finance, Inc.'s Response in Opposition to His Answer and Motion Dated September 18, 2006 (Clarification).  The Valentours did not file a response.  The court held a hearing on the Objection, Response, and Clarification on November 9, 2006.

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(A), (O) (West 2006).

**I**

On June 1, 2004, the Plaintiff, as surety, issued the Bond naming the Debtor as principal and the Director of the Tennessee Motor Vehicle Commission as obligee.  The Bond was in the penal sum of $25,000.00 and was issued for the protection of persons who might purchase or trade motor vehicles with the Debtor and, as a result of the Debtor's actions, suffer losses as defined in the Bond in the following paragraph:

> WHEREAS, the above named principal is required as a condition precedent to this appointment as such dealer to deliver annually to the oblige [sic] hereto a good and sufficient surety bond for the license period for protection of any person who suffers loss because of either:  A) Nonpayment by the dealer of a retail customer's prepaid

4

title, registration, other related fees or taxes; B) The dealer's failure to deliver in conjunction with the sale of a vehicle a valid vehicle title certificate free and clear of any prior owner's interests and all liens except a lien created by or expressly assumed in writing by the buyer of the vehicle.

OBJ., EX. 1.

On August 22, 2005, the Debtor filed the Voluntary Petition commencing its case under Chapter 11 of the Bankruptcy Code, and the case was subsequently converted to Chapter 7 on March 10, 2006. The Plaintiff filed the Complaint initiating this adversary proceeding on November 18, 2005, seeking, *inter alia*, to pay the $25,000.00 penal sum of the Bond into the registry of the court pending a determination of its obligations under the Bond.

On March 21, 2006, the Plaintiff filed the Plaintiff's Motion for Order: (i) Allowing Plaintiff to Publish Notice of this Action for the Benefit of Unknown Claimants; and (ii) Granting Leave to Deposit Funds, wherein the Plaintiff requested permission to publish notice of the adversary proceeding to unknown claimants under the Bond in order to provide such claimants the opportunity to file a claim, and that it be allowed to deposit the penal sum of $25,000.00 into the court's registry for subsequent payment to claimants under the Bond. On May 24, 2006, the court entered an Order granting the Plaintiff's request to publish notice of the adversary proceeding and instructing any unknown claimants against the Bond to file a claim within fifteen days after the final day of publication or forever be barred from making a claim under the Bond. On June 27, 2006, the Plaintiff filed a Notice of Publication and Affidavit of Publication indicating that the final date of publication was June 22, 2006. Pursuant to the Plaintiff's notice and publication, the Valentours

filed a claim under the Bond in the amount of $3,200.00, and on August 4, 2006, the Plaintiff filed

a Notice of Filing of Claim of James and Georgia Valentour.

On September 12, 2006, the court entered an Order directing the Plaintiff to deposit the

$25,000.00 representing the penal sum under the Bond into the registry of the court to be held in an

interest bearing account.[1]  The claims under the Bond, as set forth in the September 12, 2006 Order,

are as follows:

| | |
|---|---|
| M&I | $28,956.76 ( 44.1%) |
| We Sell Used Cars | $      0.00 |
| R.J. Eldridge | $19,900.00 ( 30.3%) |
| Ronald L. Goforth | $13,558.20 ( 20.7%) |
| James & Georgia Valentour | $  3,200.00 (   4.9%) |
| TOTAL | $65,614.96 (100.0%) |

SEPT. 12, 2006 ORDER at 5.  The September 12, 2006 Order also directed "that any party objecting

to the validity or amount of these Claims must do so within thirty (30) days of this Order's entry, or

else this Court shall deem all such claims to be valid in the aforementioned amounts[.]"  SEPT. 12,

2006 ORDER at 5.  Mr. Eldridge filed his Objection on September 18, 2006.

## II

Mr. Eldridge objects to M&I's standing to receive the same priority as individual buyers or

to even receive payment under the Bond, which he believes only covers direct buyer-persons.  He

also challenges the Valentours' claim, which he argues should be filed against the Debtor in its

---

[1]  The September 12, 2006 Order also declared that the Plaintiff, upon deposit of the $25,000.00, would be
relieved and discharged from any further obligations and liabilities under the Bond.  The Plaintiff deposited the
$25,000.00 into the registry of the court on September 15, 2006, where it is being held by the clerk.

6

bankruptcy case, rather than against the Bond.  Mr. Eldridge argues that he and Mr. Goforth should

take priority in disbursement under the Bond, which would be exhausted by their combined claims.

Mr. Eldridge's argument is based upon the paragraph in the Bond stating that it is to protect

the following persons:

> [A]ny person who suffers loss because of either:  A) Nonpayment by the dealer of a
> retail customer's prepaid title, registration, other related fees or taxes; B) The dealer's
> failure to deliver in conjunction with the sale of a vehicle a valid vehicle title
> certificate free and clear of any prior owner's interests and all liens except a lien
> created by or expressly assumed in writing by the buyer of the vehicle.

OBJ., EX. 1.  With respect to the Valentours, Mr. Eldridge argues that their claim does not fall within

the scope of the Bond, and therefore, it more properly belongs before the court in the claims

allowance and resolution process concerning the Debtor's pre-petition claims.  With respect to M&I,

Mr. Eldridge argues that it is not a "person" under the Bond, and that "acceptance of a title subject

to a lien held by a prior owner could for the purposes of this bond, negate the bond's obligations to

anyone who accepts a title subject to any lien IF the new owner has paid in full for the vehicle to

Rodgers GMC, Inc."  OBJ. at 3.

In its Response, M&I argues that corporations such as it are included as "persons" as defined

under Tennessee law, and that there is nothing in the Bond limiting its application to "natural

persons."  Nevertheless, M&I argues that it stands in the shoes of Defendants James E. Rose and

Elizabeth Carol Santella,[2] who did not file claims because M&I repaid them for the loss of their

---

[2] The court's September 12, 2006 Order also granted the Plaintiff's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Default Judgment against Ms. Santella and granted the Plaintiff's Motion for Default Judgment against Mr. Rose, whereby the individual claims of each Defendant under the Bond were dismissed with prejudice.

vehicles based upon the Debtor's failure to sell the vehicles with valid titles that were free and clear of prior existing liens and released them both from their obligations to M&I for the loans on the vehicles, whereby through subrogation, M&I has the right to proceed in their places.  M&I also argues that it would be unjust to interpret the Bond as applying only to "direct buyer-persons" as Mr. Eldridge encourages, because it has sustained losses in the amount of $28,956.76, and such an interpretation would result in lenders having little incentive to release direct buyers from their loan obligations in the event a vehicle is lost or repossessed through no fault of the buyer.  M&I filed Ms. Stebnitz's Affidavit to confirm that it repaid Mr. Rose and Ms. Santella the payments that they had made, excepting $650.72 and $252.00, respectively, and that it released them from all obligations to M&I, resulting in losses of $28,956.76.

In his Clarification, Mr. Eldridge states that his only concern is obtaining a clear title to the vehicle he purchased from the Debtor, which he paid for using a trade-in and a personal check. Because Defendant We Sell Used Cars has placed a lien on his truck, Mr. Eldridge seeks release of the lien.  He states that is his understanding that since he was a "good faith purchaser," any funds to which he is entitled under the Bond will be paid to We Sell Used Cars in exchange for a clear title to his vehicle.

The court agrees with M&I that, under the wording of the Bond, it applies to "any person" which includes corporations.  *See* TENN. CODE ANN. § 1-3-105(20) (2003 & Supp. 2005) (defining "person" as including a corporation).  Additionally, the court finds that M&I is also subrogated to the interests of Mr. Rose and Ms. Santella, who were, prior to September 12, 2006, entitled to

recover under the Bond, and likewise, the Valentours are subrogated to the interests of David and Marilyn Skulstad, who would be entitled to recover under the Bond.

Tennessee courts define subrogation as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003). "A right of subrogation may arise by contract ('conventional subrogation'), by application of equitable principles of law ('legal subrogation'), or by application of statute ('statutory subrogation')." *Blankenship v. Estate of Bain*, 5 S.W.3d 547, 650 (Tenn. 1999). "Equitable [or legal] subrogation is a 'legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.'" *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 494 (6th Cir. 2005) (quoting *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 747 (6th Cir. 2005)); *see also Amos v. Cent. Coal Co.*, 277 S.W.2d 457, 462 (Tenn. Ct. App. 1954).

Equitable subrogation "is founded on principles of justice and equity, and its operation is governed by principles of equity." *Castleman Constr. Co. v. Pennington*, 432 S.W.2d 669, 674 (Tenn. 1968); *see also Wimberly v. Am. Cas. Co.*, 584 S.W.2d 200, 203 (Tenn. 1979). When deciding whether to employ subrogation as a remedy, the court should balance the equities involved, and the case must be "strong and clear." *Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp. 2d 785, 792 (W.D. Tenn. 1998). The negligence of a party seeking subrogation is a factor to be considered, along with any harm to be suffered by third parties if subrogation is allowed. *Dixon v. Morgan*, 285 S.W. 558, 561-62 (Tenn. 1926). If "no one is injured by the mistake other than the

9

party himself, . . . relief may be granted, even though a high degree of care has not been exercised."

*Dixon*, 285 S.W. at 562.

> [S]ubrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation: (1) in order to protect his or her interest; (2) under a legal duty to do so; (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

*Assocs. Home Equity Servs., Inc. v. Franklin Nat'l Bank*, 2002 Tenn. App. LEXIS 207. at *15-16

(Tenn. Ct. App. Mar. 26, 2002) (quoting Restatement (Third) of the Law of Property

(Mortgages) § 7.6 (1998)).

> Generally, where a surety under a contractor's performance bond is compelled by reason of the contractor's default, to complete the contract or to pay materialmen and laborers, the surety is subrogated to the rights of the contractor and the laborers and materialmen whose claims were paid to monies earned by the contractor before default, and this is so independently of assignments.  Under this general rule as pointed out in *Finance Co. of America v. U.S. Fidelity and Guaranty Co.*, 277 Md. 177, 353 A.2d 249 (1976), "The surety, in a sense, is 'secured' by its right of subrogation, which relates back to the issuance of the bond to defeat intervening creditors."

*Third Nat'l Bank v. Highlands Ins. Co.*, 603 S.W.2d 730, 733 (Tenn. 1980) (citations omitted).


This is not a case where either M&I or the Valentours ask to be subrogated into a position ahead of a properly perfected lienholder.  Each of these parties are in the same position as Mr. Eldridge and Mr. Goforth, seeking payment under the Bond for losses incurred as a result of the actions of the Debtor, and its failure to provide payoffs whereby clear titles could be obtained by the various retail customers.

10

For these reasons, the claims of M&I, R.J. Eldridge, Ronald L. Goforth, and the Valentours

will be allowed as filed and memorialized in the September 12, 2006 Order, and each will be paid

a pro rata share of the $25,000.00 Bond proceeds paid into the court by the Plaintiff on

September 15, 2006, plus interest accrued thereon.  As of November 1, 2006, $48.53 in interest had

accrued.  Of this amount, the clerk is required to pay a 10% registry fee, $4.85, to the United States

Treasury thus leaving $25,043.68 available to satisfy the claims against the Bond.  The clerk will

accordingly be directed to disburse the Bond proceeds as follows:

| Claimant | Amount of Claims | Distribution |
|---|---|---|
| M&I Dealer Finance, Inc. | $28,956.76 ( 44.1%) | $11,044.26 |
| We Sell Used Cars, Inc. | 0.00 (  0.0%) | 0.00 |
| R.J. Eldridge | $19,900.00 ( 30.3%) | $ 7,588.24 |
| Ronald L. Goforth | $13,558.20 ( 20.7%) | $ 5,184.04 |
| James and Georgia Valentour | $ 3,200.00 (  4.9%) | $ 1,227.14 |
| **TOTAL** | **$65,614.96** (100.0%) | **$25,043.68** (100.0%) |

Because interest will continue to accrue in a nominal amount from November 1, 2006, until

all funds are disbursed from the registry account and paid, the court will direct that such additional

interest be disbursed by the clerk to the United States Treasury as unclaimed funds.

An order consistent with this Memorandum will be entered.

FILED:  November 14, 2006

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE